IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL WILKS                                                    PLAINTIFF

VS.                                      CIVIL ACTION NO. 3:13cv688-DPJ-FKB

CAPT. BRIAN WATSON, et al.                                      DEFENDANTS

## REPORT AND RECOMMENDATION

Michael Wilks brought this action pursuant to 42 U.S.C. § 1983 against officials at the Madison County Detention Center alleging claims of excessive force and failure to protect. Presently before the Court is the motion of Defendants for summary judgment based upon qualified immunity. Wilks has not responded to the motion. For the reasons stated herein, the undersigned recommends that the motion be granted as to Defendants Brian Watson, Chuck McNeal, and Calvin Simmons, and that it be granted in part and denied in part as to Defendant Luke Podskarby.

Wilks's claims arise out of an incident that occurred on June 15, 2012,[1] at the Madison County Detention Center, where Wilks was housed as a pretrial detainee. At the omnibus hearing,[2] Wilks testified that he was in the visitation room when Defendant Podskarby, a detention center officer, opened the door and said,"Nigger, you need to come on get out of there before I kick your ass." Wilks claims that he walked out of the visitation room and asked Podskarby, "What if I were to call you, you know, a honkey and

---

[1]Wilks has at times identified the date of the incident as July 15, 2012. The detention center's records, however, show that it occurred on June 15, 2012.

[2]The omnibus hearing functioned as a *Spears* hearing, *see Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), as well as a case management and pretrial conference.

told you I would kick your ass?"  According to Wilks, Podskarby then struck Wilks on the head with his fist and tried to choke him.  Wilks defended himself by striking Podskarby, who fell to the ground.  Defendant Calvin Simmons then tripped Wilks, causing him to fall to the ground.  In spite of the fact that Wilks lay face down on the ground with his hands by his sides and did not move, Simmons fired two shots at him from a taser.  Wilks was then handcuffed and taken to medical, where Podskarby tried to choke him again and pulled his legs and feet back while removing the taser darts.  When questioned about his specific injuries, Wilks testified that he received skin wounds from the taser and experienced leg pain while Podskarby was removing the darts. He testified that he was suing Officers Chuck McNeal and Brian Watson because they were present during Podskarby's assault of him in the medical clinic and did nothing to prevent it.

In support of their motion, Defendants have submitted, *inter alia*, the affidavit of Deputy Sheriff James Knight, who was present outside of the visitation room.  Attached to Knight's affidavit is a copy of the incident report prepared by him.  Knight gives a version of the events outside of the visitation room that differs markedly from Wilks's.  According to Knight, Podskarby instructed Wilks several times to come out of the visitation room. When Wilks finally did so, he used the phrase "kick your ass" at Podskarby and made an aggressive move toward him.  Podskarby then attempted to take Wilks to the ground, but Wilks got on top of Podskarby.  Knight attempted to help Podskarby and then deployed the taser at Wilks.  When Wilks tried to get up off of the ground, Knight fired the taser a second time.  According to Knight, Simmons's only role was to try to intervene in the altercation between Wilks and Podskarby.

Defendants have also submitted a cd recording of a surveillance tape showing the incident outside of the visitation room, along with an affidavit by Defendant McNeal identifying the persons shown in the video.  In the video, as Wilks exits the visitation room, Podskarby motions for him to stand at the wall.  Wilks does so, his hands behind his back.  It is clear  that Podskarby never hits or chokes Wilks.  However, the video does show Podskarby placing his hands on Wilks and taking him down.  Furthermore, the video does not show any "aggressive move" by Wilks prior to being taken down.  After he is taken down, Wilks goes down on top of Podskarby and a struggle ensues.  Throughout the struggle, Knight has his taser pointed toward Wilks, but it is unclear to the undersigned exactly when he deploys it.   Once an officer places handcuffs on Wilks, Knight puts away his taser.

Defendants have moved to dismiss on the basis of qualified immunity.  The analysis of the defense of qualified immunity in an excessive force claim involves two inquiries:  Whether the plaintiff has established a constitutional violation, *i.e.*, whether the officer's use of force was objectively reasonable, and whether the right was clearly established such that a reasonable officer would have known that the particular amount of force used was excessive.  *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S.194, 200-02 (2001)).  Where the force is applied in the context of a prison or jail situation, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).[3]

The undersigned concludes that Wilks has failed to raise a genuine factual issue as to any constitutional violation by Watson, McNeal, or Simmons.  His only testimony concerning Watson and McNeal are that they were present in the medical clinic and saw Podskarby choke him.  He has not alleged any further or more specific facts indicating that Watson and McNeal had any reasonable opportunity to intervene.   Wilks's claim against Simmons for using a taser on him also fails, as the undisputed credible evidence indicates that it was Knight, not Simmons, who deployed the taser.

As to the claims against Podskarby, the undersigned concludes that questions of fact exist as to whether the initial use of force against Wilks while he was standing at the wall outside of the visitation room was excessive.  Accordingly, Podskarby is not entitled to summary judgment on this claim.

Wilks also alleges that after he was taken to the medical clinic, Podskarby pulled his legs while removing the taser darts and that he choked him.   Podskarby argues that he is entitled to summary judgment because there is no evidence that Wilks suffered any injury from these alleged actions.  He points out that Wilks's medical records following the incident do not reflect any complaints of or treatment for leg pain.  The undersigned disagrees with Podskarby's assertion that there is *no* evidence of injury related to the

---

[3]*Hudson* involved a convicted prisoner and its analysis was therefore under the Eighth Amendment.  A pretrial detainee's right not to be subjected to excessive force flows not from the Eight Amendment, but from the Due Process Clause of the Fourteenth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).   However, the standard for analysis of excessive force claims under the Fourteenth Amendment is the same as the Eighth Amendment standard applicable to claims by convicted prisoners. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993).

alleged incidents in the medical clinic.  Wilks testified that he suffered from pain in his leg when Podskarby pulled on it and that Podskarby choked him, causing him to gasp for air. While Wilks's evidence may not establish a significant medical injury, he has certainly testified as to some injury, however insignificant it may have been.

Nevertheless, the relatively minor extent of injury sustained by Wilks is a relevant factor that this court is to consider in making the broader determination of whether the force was excessive.  *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178  (2010); *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Other factors that may be relevant are the need for the use of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison officials, and any efforts made to temper the severity of the force.  *Hudson,*  503 U.S. at 7.   Here, the relevant factors are the extent of injury and the necessity of the force.  The extent of Wilks's injury to his leg was, by his own testimony, relatively minor.  Considering the lack of any evidence of injury other than transient pain to Wilks's leg, and the need for the use of some force for the removal of the taser darts, the undersigned concludes that Wilks's testimony that Podskarby hurt his leg while removing the taser darts establishes, at most, only a *de minimis* use of force. Therefore, Wilks's evidence fails to create a genuine factual issue on this claim.  *See id.* at 9-10 (no constitutional violation where use of force is *de minimis*).

The allegation as to having been choked by Podskarby in the medical clinic, however, is another matter.  The evidence on this claim is Wilks's testimony that Podskarby, without provocation from Wilks, choked him until he was gasping for air. While the amount of force alleged might be considered relatively minor, it would

nevertheless be excessive in a constitutional sense if applied in the absence of any need and purely for a malicious purpose.  *See Williams v. Bramer*, 180 F.3d 699, 704, *clarified on reh'g*, 186 F.3d 633, 634 (5th Cir. 1999) (holding that choking by officer for no legitimate reason and resulting in "fleeting dizziness, temporary loss of breath and coughing" would constitute excessive force).  Stated otherwise, Wilks's testimony is sufficient to create a genuine issue as to whether Podskarby used excessive force by choking Wilks. Furthermore, a reasonable officer would have known that it was unlawful to maliciously choke a prisoner without cause.  Therefore, the undersigned concludes that Podskarby is not entitled to qualified immunity on this claim.

For these reasons, the undersigned recommends that the motion be denied as to Wilks's claim against Podskarby regarding the incident outside the visitation room and the alleged choking incident in the medical clinic and that it be granted as to all remaining claims.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 27th day of January, 2015.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE

6