UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL WILKS                                                                    PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:13cv688-DPJ-FKB

CAPTAIN BRIAN WATSON, et al.                                                     DEFENDANTS

ORDER

This § 1983 case is before the Court on the Report and Recommendation [34] entered by

Magistrate Judge F. Keith Ball on January 27, 2015.  In his R&R, Judge Ball recommended that

Defendants' Motion for Summary Judgment [31] be granted except as to two excessive-force

claims against Defendant Luke Podskarby (incorrectly identified in the pleadings as Leo

Podskarby).  For the reasons that follow, the Court adopts the R&R as the ruling of the Court.

I.         Facts and Procedural History

Plaintiff Michael Wilks's claims arise from a series of incidents that took place on June

15, 2012, at the Madison County Detention Center, where Wilks was housed as a pretrial

detainee.  All agree that Wilks was in the visitation room when Podskarby, a detention-center

officer, beckoned him out.  There is also no dispute that Podskarby placed his hands on Wilks

and the two went to the floor.  The parties otherwise present differing accounts of the initial

contact and what followed.

According to Wilks, Podskarby opened the door to the visitation room and said, "Nigger,

you need to come on get out of there before I kick your ass."  Omnibus Tr. [31-1] at 6.  Wilks

testified that he exited the visitation room and responded by asking Podskarby, "What if I were to

call you, you know, a honkey and told you I would kick your ass."  *Id.*  Wilks claims that

Podskarby "immediately . . . struck [him] on [his] head and . . . tried to choke [him]."  *Id.*  The

two struggled, and Wilks was shot twice with a taser gun.  Officers then cuffed Wilks and took

him to the infirmary, where he says Podskarby again tried to choke him and otherwise injured

him while removing the taser darts from his legs.

Defendants dispute Wilks's account of the incident.  An affidavit submitted by Deputy

Sheriff James Knight, the officer who deployed the taser at Wilks, says that Podskarby instructed

Wilks "more than once" to exit the visitation room.  Knight Aff. [31-2] ¶ 1.  According to the

Use of Force Report Knight completed after the incident, Wilks told Podskarby "'I will beat your

ass,' and made an aggressive move towards" Podskarby.  *Id.* at Ex. B-1.  At that point, according

to Knight's report, Podskarby "took down the inmate and the inmate got on top of" Podskarby,

before Knight fired the taser at Wilks.  *Id.*  Finally, Defendants' Objection indicates that

Podskarby "merely placed his hands on the plaintiff in an effort to force the plaintiff to lie

down."  Objection [35] at 2.

Defendants have submitted a surveillance video showing the incident outside the

visitation room.  The video contradicts, in part, both parties' versions of the initial incident.

First, Podskarby never appears to choke or hit Wilks in the head (though Wilks's head may have

hit the wall when Podskarby first made contact).  Second, the video does not show Wilks make

any "aggressive move[s] towards" Podskarby.  Instead, Wilks is standing in a submissive

position with his chest against a wall and his hands behind his back waiting to be shackled.  It

appears Wilks may have made some comment to Podskarby, though there is no audio, and at that

point, Podskarby moves quickly forward, grabs Wilks by the collar, and forcefully pulls him to

the floor.  As they go down, Wilks resists and ends up on top of Podskarby before being tasered.

Wilks filed this lawsuit on November 4, 2013.  He asserts claims against Podskarby,

Captain Brian Watson, Major Chuck McNeal, and Calvin Simmons.  Defendants filed their

Motion for Summary Judgment [31] on August 18, 2014.  Wilks did not respond, and Judge Ball

entered his R&R on January 27, 2015.  The Court has personal and subject-matter jurisdiction

and is prepared to rule.

II.      Standard

Defendants premise their motion on qualified immunity.  "Qualified immunity shields

government officials from civil damages liability unless the official violated a statutory or

constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v.*

*Howards*, 132 S. Ct. 2088, 2093 (2012).  "When a defendant invokes qualified immunity, the

burden is on the plaintiff to demonstrate the inapplicability of the defense."  *McClendon v. City*

*of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

> Because qualified immunity constitutes an immunity from suit rather than a mere
> defense to liability, the defense is intended to give government officials a right not
> merely to avoid standing trial, but also to avoid the burdens of such pretrial
> matters as discovery . . . as [i]nquiries of this kind can be peculiarly disruptive of
> effective government.  Thus, adjudication of qualified immunity claims should
> occur at the earliest possible stage in litigation.

*Id.* (alterations in original) (emphasis deleted) (citations and internal quotation marks omitted).

To determine if an individual is entitled to qualified immunity, the court applies a two-

step analysis.  "First, [the court] ask[s] whether, considered in the light most favorable to the

plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated

the plaintiff's constitutional rights."  *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 238

(5th Cir. 2008) (per curiam) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "If the

defendant's conduct did not violate [the] plaintiff's constitutional rights under the first prong, . . .

he is entitled to qualified immunity." *Blackwell v. Laque*, 275 F. App'x 363, 366 (5th Cir. 2008)

(per curiam).  The second prong requires the court to consider

> whether the defendant's actions were objectively unreasonable in light of clearly
> established law at the time of the conduct in question.  To make this
> determination, the court applies an objective standard based on the viewpoint of a
> reasonable official in light of the information then available to the defendant and
> the law that was clearly established at the time of the defendant's actions.

*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citation omitted).

III.    Analysis

A.      Claims against Watson, McNeal, and Simmons

Judge Ball recommended that the motion be granted as to Wilks's claims against Watson,

McNeal, and Simmons because "Wilks has failed to raise a genuine factual issue as to any

constitutional violation" committed by them.  R&R [34] at 4.  The Court agrees that there is no

evidence that Watson, McNeal, or Simmons violated Wilks's constitutional rights.  The motion

for summary judgment is therefore granted as to the claims against them.

B.      Claims against Podskarby

Judge Ball recommended that Defendants' motion be granted as to the claim against

Podskarby related to his removal of the taser darts from Wilks's leg.  The Court agrees that

Wilks fails to establish that Podskarby used excessive force in removing the taser darts.  The

motion for summary judgment is granted as to this discrete claim.

But Judge Ball recommended denying Defendants' motion as to the claims against

Podskarby concerning the take-down outside the visitation room and the alleged choking in the

infirmary.  Judge Ball found genuine issues of material fact as to whether Podskarby used

excessive force against Wilks.  Judge Ball was correct on both accounts.

Starting with the incident outside the visitation room, Podskarby objects, asserting that

"there was a need for the application of the force" and "the amount of force . . . used . . . was

commensurate to the need."  Objection [35] at 2.  But he ignores the factual dispute.  Under Rule

56, the Court must view the evidence in a light most favorable to the non-moving party—here,

Wilks.  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam).  And when

the video is viewed in that light, it contradicts Podskarby's claim that he "merely placed his

hands on" Wilks.  Objection [35] at 2.  It likewise raises a question whether the force was

reasonable.  These questions of fact are for a jury.  *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404,

411 (5th Cir. 2009) (explaining that "the reasonableness of an officer's conduct . . . is often a

question that requires the input of a jury").

Podskarby next argues that Wilks's claim based on the incident outside the visitation

room fails because "there is no evidence whatsoever that the plaintiff suffered any injury from

the force Podskarby used toward him."  Objection [35] at 2.  "When evaluating whether a

defendant's conduct violated a constitutional right . . . in the context of an excessive force claim,

the Supreme Court has held that the core judicial inquiry is not whether a certain quantum of

injury was sustained, but rather whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm."  *Comeaux v. Sutton*, 496 F.

App'x 368, 370 (5th Cir. 2012) (per curiam) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)

(per curiam)) (internal quotation marks omitted).  "An inmate who is gratuitously beaten by

guards does not lose his ability to pursue an excessive force claim merely because he has the

good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.  Instead, the extent of

the injury suffered by the plaintiff is among the factors relevant to a determination of whether the

force was constitutionally excessive.  *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (listing

factors); R&R [34] at 5.  Having viewed the video of the incident, the Court cannot say that

Wilks suffered insufficient injury to pursue an excessive-force claim.

Turning to the alleged incident in the infirmary, Wilks claims "Podskarby, without

provocation from Wilks, choked him until he was gasping for air."  R&R [34] at 5.  Podskarby

denies that it happened—a question of fact—and further objects that Wilks was not injured.

Again though, the paramount question is whether the force used was unreasonable.  *Comeaux*,

496 F. App'x at 370.  And in this case, Wilks claims that it was unprovoked.  Thus, as Judge Ball

noted, "Wilks's testimony is sufficient to create a genuine issue as to whether Podskarby used

excessive force by choking Wilks."  R&R [34] at 6; *see also* Omnibus Tr. [31-1] at 8

("[Podskarby was] choking me, having his hand around my neck choking me.  I'm grasping for

air, you know.").  The Court adopts Judge Ball's conclusions as to the incident outside the

visitation room and the choking incident in the infirmary.

III.     Conclusion

The Court has considered all the parties' arguments.  Those not specifically addressed

would not have changed the outcome.  For the foregoing reasons, the Report and

Recommendation [34] is adopted as the opinion of the Court.  Defendants' Motion for Summary

Judgment [31] is denied as to the excessive-force claims against Defendant Podskarby arising

from the incident outside the visitation room and the choking incident in the infirmary.  The

motion is otherwise granted as to all remaining claims.  The parties are instructed to contact

Judge Ball's chambers within 10 days of the entry of this Order to set the case for a settlement conference.  In the event the case does not settle at the settlement conference, the parties shall contact the undersigned's Courtroom Deputy, Shone Powell, to reset this matter for a pretrial conference and trial.

      **SO ORDERED AND ADJUDGED** this the 19th day of February, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE
